DECISION.
{¶ 1} Defendant-appellant Michael Douthit, a minor, was adjudicated delinquent by the Hamilton County Juvenile Court for his participation in an aggravated robbery. The court sentenced Douthit to a minimum term of one year in the Department of Youth Services. We affirm.
 I. As Thick as Thieves {¶ 2} Around mid-April 2005, David Ramsey was walking his dog, when he saw Douthit and two friends standing on the corner. As he continued walking, Ramsey glanced over his shoulder and noticed he was being followed by the three men — walking together — as thick as thieves. Sensing trouble, Ramsey stopped outside a friend's house. As he was talking to his friend, the three suspicious men continued to walk down the street, bypassing Ramsey along the way.
 {¶ 3} Once Ramsey lost sight of the three men, he began to walk back to his aunt's house. While Ramsey was letting his dog in the gate, the three men approached him from the rear and ordered him to turn around. As Ramsey turned and faced the band of thieves, he saw that one of the men was pointing a gun at his chest. The gunman was in the middle, Douthit was behind the gunman on the left, and a third man was behind the gunman on the right. Ramsey later testified that because the gun was held in such proximity to his chest, he was not sure it was actually a gun — but that he had believed it to be a gun at the time of the robbery.
 {¶ 4} The gunman instructed Ramsey to hand over his cash and the black leather coat that he was wearing. Another thief also ordered Ramsey to remove his earrings. Ramsey replied that he was not carrying any cash, but promptly handed the coat to the gunman and his earrings to the third individual. The gunman told Ramsey that if he did not have any cash, he would be shot. The third individual repeatedly told the gunman not to shoot Ramsey, whereas Douthit continually encouraged the gunman to fire upon Ramsey. Douthit then proceeded to check Ramsey's pockets for cash, but found none.
 {¶ 5} When Douthit had finished checking Ramsey's pockets for cash, the other two assailants had already begun to walk away. Douthit followed. Immediately after the robbery, Ramsey called the police, and the responding officers arrived at the scene less than a minute later. Ramsey described the three men to the officers, but they were unable to locate the suspects.
 {¶ 6} The next day, Ramsey's aunt returned home and informed him that, while downtown, she had seen an individual wearing the stolen jacket. The two returned downtown and found Douthit. Ramsey immediately recognized Douthit as one of the robbers and confirmed that the jacket Douthit was wearing was the same jacket that had been stolen the night before. The police were called, and Douthit was arrested.
 {¶ 7} Douthit's single assignment of error challenges the legal sufficiency and manifest weight of the evidence used to adjudicate him delinquent for his role as an accomplice to aggravated robbery.
 {¶ 8} In criminal cases, appeals challenging the sufficiency of the evidence are distinguishable from appeals challenging the manifest weight of the evidence.[1]
 {¶ 9} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law.[2] The relevant inquiry in a claim of insufficiency is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proved beyond a reasonable doubt.[3]
 {¶ 10} A challenge to the weight of the evidence attacks the credibility of the evidence presented.[4] When evaluating a claim that a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[5] The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[6]
 {¶ 11} The trial court based its delinquency adjudication on a theory of complicity for Douthit's role in the robbery. To establish that Douthit was an accomplice, the state was required to prove, beyond a reasonable doubt, that he was acting with the culpability level required for the commission of robbery, and that he assisted, encouraged, cooperated with, advised, or incited another to commit the offense.[7]
 II. Douthit's Identity {¶ 12} Douthit's assignment of error essentially argues that this is a case of mistaken identity. In support, Douthit attacks Ramsey's testimony as being less than credible because (1) at the time of the robbery it was dark outside; (2) Ramsey was, purportedly, focused on the gun that was pointed at him; and (3) Ramsey was unable to identify the other two individuals. Douthit further asserts that Ramsey was only able to identify him by the leather jacket he was wearing.
 {¶ 13} But Ramsey's trial testimony revealed (1) that as he was being robbed, he was able to get a good look at Douthit's face and had recognized him as someone he had seen many times before; (2) that the previous summer the two had been in some sort of altercation; and (3) that the next day he had positively identified both the jacket and Douthit's face. Even more damning was Douthit's audio-taped interview conducted by Officer Patrick Galligan. In that interview, Douthit admitted being at the scene with the two other men.
 {¶ 14} This is not a case of mistaken identity. Accordingly, we conclude that a rational factfinder viewing the evidence most favorably to the state could have found beyond a reasonable doubt that Douthit was guilty of complicity to aggravated robbery. We also conclude that the trier of fact did not lose its way, and that Douthit's delinquency adjudication was not against the manifest weight of the evidence.
 {¶ 15} We affirm the juvenile court's judgment.
Judgment affirmed.
Gorman, P.J., and Sundermann J., concur.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
[2] Id.
[3] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[4] See State v. Thompkins, supra, at 387.
[5] See id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[6] See State v. Martin, supra.
[7] See R.C. 2923.03(A)(2); see, also, State v. Lowery,160 Ohio App.3d 138, 146, 2005-Ohio-1181, 826 N.E.2d 340, citingState v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336,754 N.E.2d 796.